IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00257-RN

| | |
|---|---|
| **Ricardo Vega**, | |
| Plaintiff, | |
| v. | **Order** |
| **Wake County Government, et al.**, | |
| Defendant. | |

On May 1, 2014, Plaintiff Ricardo Vega ("Vega"), *pro se*, filed a Complaint (D.E. 1) against Wake County Government; Jim Hartman, Wake County Manager; Ramon Rojano, Human Services Department Director; and Warren Ludwig, Child Welfare Director (collectively, "Wake County"). His Complaint alleged retaliatory termination, failure to employ, failure to promote, harassment and hostile work environment based on race, national origin, and "ethnic background customs" in violation of Title VII of the Civil Rights Act of 1964. It also alleged that Vega was underpaid in violation of the Equal Pay Act and Title VII. Wake County has asked the court to dismiss Vega's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 22.)

Vega's Complaint contained information that is treated as confidential under North Carolina law, so the court ordered Vega's original Complaint sealed and required him to file an Amended Complaint with the confidential information redacted. (D.E. 52, 54.) Vega filed an Amended Complaint on January 5, 2015 in which he redacted the confidential information and elaborated the various forms of relief requested. (D.E. 54.) Because the court ordered Vega to file an amended complaint merely to redact confidential information, the court did not require

Wake County to refile its Motion to Dismiss. Wake County did however file an Answer (D.E. 61) to the Amended Complaint which asserted various defenses and responded to Vega's allegations.

Prior to the court's ruling on Wake County's Motion to Dismiss or any discovery, Vega also filed a Motion for Summary Judgment (D.E. 28). He subsequently filed a Motion for Sanctions (D.E. 37) alleging that Wake County's Answer (D.E. 21) to his original Complaint violated Rule 11 of the Federal Rules of Civil Procedure.

For the following reasons, the court grants Wake County's Motion to Dismiss (D.E. 22) as to all of Vega's claims except for his retaliatory termination claim. For the reasons stated below, Vega's Complaint[1] establishes a prima facie case for retaliatory termination and it may go forward to the discovery stage. All other claims, however, are dismissed. Furthermore, the court denies Vega's Motion for Summary Judgment (D.E. 28) without prejudice because it is premature, and denies his Motion for Sanctions (D.E. 37) because it is without merit.

## I. Factual Background

Vega's Complaint identifies him as a Canadian citizen of Latino-descent who worked for Wake County Human Services as a social worker from 2005 until his termination from employment on November 25, 2013. (D.E. 54; Compl. at 2-4.) He worked for Wake County under a North American Free Trade Agreement ("NAFTA") work visa. (*Id.*) Before and after his termination, Vega complains of various forms of misconduct. First, Vega claims that he was underpaid — earning $36,500 when he claims he should have been paid at least $41,500 — and cites without elaboration a "County document dated February 2, 2010" for support. (*Id.* at 4.)

---

[1] All references will be to Vega's Amended Complaint (D.E. 54), but it will be referred to simply as his "Complaint."

Second, Vega states that "[p]ersonal points of view or differences with supervisor, adversely affected his status as employee to the point of dismissal." (*Id.*) Specifically, he alleges that he received unfair and inaccurate performance evaluations. Vega cites multiple disciplinary reports and performance evaluations spanning from 2010 until 2013 in which he was repeatedly accused of exercising poor judgment in his handling of cases, failing to consult with his supervisor, providing inaccurate information, making inappropriate communications with other staff, and insubordination. (*Id.* at 5-7.) Vega received three written warnings for exercising poor judgment, insubordination, failing to follow policy, and other problems.[2] (*Id.* at 5, 7-8.) He states that these disciplinary documents were inaccurate and unfair and that his supervisor was inattentive to his needs. (*Id.* at 11.)

Vega's Complaint recounts many events that were the subject of the various disciplinary documents. He discusses two instances in which he was accused of poor judgment. In one such instance, he claims that he was "falsely accused" by a parent under his supervision of inappropriately offering his wife's babysitting services to help care for that parent's children. (*Id.* at 10.) In another situation, Vega took a photograph of a five year old girl during a social services visit to her home. (*Id.* at 11.) Vega was again accused of poor judgment for taking this photograph. He contends, however, that he took the photograph "because he loves the children he works with and he thought this girl was very cute and his by then 15 and 13 years old daughters would love her." (*Id.*) He also states that he took the picture with the mother's permission, that the child was appropriately dressed, and that taking such a photograph "could be considered something normal" in his home-country of Colombia. (*Id.*)

---

[2] These written disciplinary reports were dated October 18, 2012, February 20, 2013, and November 7, 2013. For reasons discussed below, only the third written disciplinary report is properly before the court in this action. The others are considered as background.

After receiving his third written disciplinary report on November 7, 2013, Vega submitted a grievance to the report on November 15, 2013 to Bob Sorrell, Deputy Director of Wake County Human Services. (*Id.* at 13.) He submitted his grievance because he was "[t]ired of accusations and biased written warnings, unjust and discriminatory employment practices" that did not fairly construe Vega's actions. (*Id.*) His grievance complained of inaccuracies in the report and the unresponsiveness of his supervisor to his email communications.

In a subsequent meeting on November 25, 2013, Mr. Sorrell dismissed Vega from employment "based on the written warning allegations of poor judgment, low performance, and insubordination." (*Id.* at 14.) Vega appealed the decision to terminate him and a hearing was scheduled on January 27, 2014.

On December 2, 2013, soon after Vega was terminated from his position, he applied for a Senior Case Manager position with the Child Care Subsidy Program and was interviewed for the position. (*Id.* at 14.) Wake County offered the position to Vega to begin work on January 28, 2014. Because of that offer, Vega cancelled his appeal of his termination. Later, however, "Wake County did not continue considering [Vega] for the child care position that had been offered." (*Id.*) On February 21, 2014, Vega attempted to reinstate his appeal of his discharge from employment but was told that his appeal rights had been exhausted. (*Id.* at 15.)

Over the course of his time with Wake County, Vega had previously applied for 28 positions within Wake County social services. (*Id.* at 12.) He received an interview for only one of those positions, even though he satisfied all the minimum requirements for the positions and spoke Spanish, a language ability at least some of the job postings said was preferred. (*Id.*)

On March 7, 2014, Vega filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on national origin between

November 25, 2013 and January 31, 2014 — the dates spanning his termination from employment to the end of Wake County's consideration of him for the position of Senior Case Manager with the Child Care Subsidy Program. (*Id.* at 15; D.E. 58.) On April 1, 2014, he received the EEOC's Notice of Right to Sue. He commenced this action on May 1, 2014.

Vega's Complaint states that he seeks recovery of back pay, reinstatement, compensation for emotional distress, and an order enjoining Wake County to work with him in his pursuit of American citizenship. (*Id.* at 15-17.)

## II. Legal Standard

Wake County has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The County's Rule 12(b)(1) motion asserts that Vega failed to exhaust administrative remedies and that the court lacks subject matter jurisdiction to hear his claims. In a Rule 12(b)(1) motion, the court may look beyond the pleadings and "the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993) (citations omitted); *see Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). It is the plaintiff's burden to prove that jurisdiction in this court is proper. *See DeBauche v. Virginia Commonwealth Univ.,* 7 F.Supp.2d 718, 721 (E.D. Va. 1998). The court must presume that all factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003).

The Supreme Court has explained that in order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, while a court must accept all the factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory in nature or nothing more than a formulaic recitation of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief'" *Id.* If a party fails to show that they are entitled to relief, the court must dismiss the deficient claim.

### III.    Analysis

### A.    Subject Matter Jurisdiction under Rule 12(b)(1)

Vega alleges various forms of discrimination in violation of Title VII of the Civil Rights Act of 1964. "A Title VII plaintiff must comply with 42 U.S.C.A. § 2000e-5 (e)(1) in order to pursue his claim in federal court." *Huff v. Bd. of Governors of Univ. of N.C.*, 334 F. App'x 583, 584 (4th Cir. 2009). The statute requires a plaintiff to file his charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice unless within that period the claimant had initially instituted proceedings with a state or local agency. 42 U.S.C.A. § 2000e-5 (e)(1). Failure to timely file a charge with the EEOC bars the claim in federal court. "Even claims alleging a continuous violation of Title VII must allege a discriminatory act committed

within the limitations period, and discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396, 411 (M.D.N.C. 2011) (citations and quotation marks omitted).

Furthermore, the allegations contained in an EEOC charge of discrimination generally operate to limit the scope of any subsequent civil suit. However, "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) (citations omitted).

Wake County's motion for lack of subject matter jurisdiction under Rule 12(b)(1) rightly contends that the court may only adjudicate alleged acts of discrimination occurring within 180 days of the date that Vega filed his original Charge of Discrimination with the EEOC. Vega's Charge of Discrimination was filed on March 7, 2014, so the court will only consider alleged acts of discrimination extending back to September 9, 2013.

Wake County wrongly contends, however, that the dates of discrimination Vega specified in his Charge of Discrimination — November 25, 2013 to January 31, 2014 — make acts of discrimination occurring outside of that time window unactionable. The dates that a plaintiff identifies for acts of discrimination in an EEOC charging document do not strictly limit the scope of a subsequent federal action. The court construes a *pro se* complainant's administrative

charge liberally and may consider all alleged acts reasonably related to his claims within the 180 day limitations window. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Vega's Charge of Discrimination is based on national origin. To the extent, therefore, that Vega's Complaint attempts to allege discriminatory conduct based on race and "ethnic background customs," these claims are dismissed. *See id.* ("A claim will also typically be barred if the administrative charge alleges one type of discrimination-such as discriminatory failure to promote-and the claim encompasses another type-such as discrimination in pay and benefits."). Wake County does not otherwise challenge the court's jurisdiction over Vega's substantive claims under Rule 12(b)(1), but only the time-frame within which those claims may be considered.

## B.    Vega's Title VII national origin claims and Rule 12(b)(6)

Vega contends that Wake County discriminated against him in multiple ways based on his national origin. Vega is a Latino who holds Canadian citizenship and has been working in the United States under a NAFTA visa since 2005. Accordingly, Vega is a member of a protected class for the purpose of all of his Title VII claims.

### (1)    Discriminatory discipline

To establish a prima facie case of discriminatory discipline under Title VII, Vega must show: (1) he is part of a class protected by Title VII; (2) his prohibited conduct was comparably serious to misconduct by employees outside the protected class; and (3) the disciplinary measures taken against him were harsher than those enforced against other employees. *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353-54 (4th Cir. 2009) (citation omitted).

Vega argues that the "amount, frequency, and diversity" of the disciplinary actions taken against him constituted discriminatory discipline. (D.E. 54; Compl. at 3.) He recounts at length his version of events that led to written disciplinary reports from Wake County accusing him of poor judgment and associated misconduct. He does not, however, allege any facts to suggest that the disciplinary measures taken against him were harsher than the discipline imposed on other employees who committed comparable misconduct.

Vega does not therefore make out a *prima facie* case for discriminatory discipline and this claim is DISMISSED.

### (2)  Retaliatory termination

To establish a *prima facie* case of retaliation, Vega must show the following elements: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998). Protected activity within the meaning of Title VII includes reasonably opposing discriminatory practices. *Kubicko v. Ogden Logistics Servs.,* 181 F.3d 544, 551 (4th Cir. 1999). Under 42 U.S.C. § 2000e-3(a), "protected activities fall into either the opposition clause or the participation clause." *Id.* Oppositional activities may include "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* (citation omitted). When a plaintiff alleges that an employer (1) knew that an employee engaged in a protected activity and (2) took an adverse action against him within a short period of time, then the plaintiff has established the causal connection element of the prima facie case. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (discussing the problem within the failure to hire context).

Vega contends that he was fired because he submitted to his supervisors a grievance against his third written warning which he received on November 7, 2013. (D.E. 54; Compl. at 13.) Vega's Complaint states that he submitted his grievance in response to the written warning and to "previous discriminatory employment practices." *Id.* The Complaint construes Vega's grievance as a response to the perception of discriminatory treatment. Seen from this perspective, Vega's grievance employed an informal grievance procedure to protest what he perceived as discriminatory treatment. As such, Vega's grievance may reasonably be regarded as an attempt "to bring attention to an employer's discriminatory activities" which satisfies the first element of the prima facie case for retaliation. *See Kubicko*, 181 F.3d at 551.

When Vega's Complaint goes on to describe the content of his grievance, however, the issue becomes less clear. Vega states that his grievance included copies of emails and other documents involved in the incidents leading up to his third disciplinary warning. (D.E. 54; Compl. at 13.) This description of the content of the grievance makes no mention of discrimination. This fact makes it unclear whether the grievance was a communication designed to call his employer's attention to discrimination in the workplace or simply an employee's effort to justify himself in a disagreement with his supervisor. It is a close call; however, in relation to a Rule 12(b)(6) motion, the court must construe all facts alleged in a complaint in the light most favorable to the plaintiff. Regarded in a favorable light, Vega's Complaint alleges a grievance submitted in opposition to perceived discrimination sufficient to establish the first element of the *prima facie* case for retaliation.

Vega submitted his grievance on November 15, 2013 to Deputy Director Bob Sorrell. (D.E. 54; Compl. at 13.) Sorrell then terminated Vega on November 25, 2013. (*Id.* at 14.) Vega's termination was undoubtedly an adverse employment action that satisfied the second

element of the prima facie case. Furthermore, because Vega alleges that Sorrell knew about Vega's grievance and terminated Vega a mere 10 days later, Vega has alleged sufficient facts to establish the third element of the *prima facie* case.

Vega's Complaint satisfies the prima facie case for retaliatory discrimination. Therefore, Wake County's Motion to Dismiss on this claim is denied.

### (3) Discriminatory failure to hire or promote

Title VII prohibits employers from failing or refusing to hire or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Vega claims that he applied for at least one position after September 9, 2013 and suggests that he was rejected based on discriminatory animus.[3]

To establish a *prima facie* case for either failure to hire or failure to promote based on discrimination, Vega must allege that (1) he is a member of a protected class; (2) he applied for a position for which there was a vacancy; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Falegan v. Thomas*, 2009 WL 3415665, at *2 (E.D.N.C. Oct. 22, 2009); *see Amimokri v. Balt. Gas and Electric Co.,* 60 F.3d 1126, 1128 (4th Cir. 1995) (analyzing plaintiff's Title VII failure to promote claim based on national origin); *see also Poskocil v. Roanoke Cty. School Div.*, 1999 WL 15938 (W.D. Va. 1999) (considering plaintiff's Title VII failure to hire claim based on national origin).

---

[3] Vega claims to have applied for 28 jobs with Wake County between August 10, 2012 and December 2, 2013. (D.E. 54; Compl. at 12.) He only specifically identifies one application — his last one, on December 2, 2013 — that falls within the limitations period beginning on September 9, 2013 and ending when he filed his Charge of Discrimination on March 7, 2014.

Here, Vega alleges facts sufficient to satisfy the first three elements of the prima facie case — he is Latino and applied for open positions for which he was qualified or had held in the past. (D.E. 54; Compl. at 14.) He alleges no facts, however, that give rise to an inference of unlawful discrimination. He does not allege, for instance, that the positions for which he applied were ultimately filled by persons outside of the protected class. Furthermore, his Complaint contains many factual allegations that would provide a non-discriminatory basis on which to reject his job applications.

As Vega does not allege sufficient facts to establish a *prima facie* case for discriminatory failure to hire, his claim is dismissed.

### (4)     Hostile work environment

Vega contends that "[t]he amount frequency and diversity of the repeated [disciplinary acts against him] would not have occurred if the plaintiff were a US Citizen, which is another form of discrimination based on national origin." (D.E. 54; Compl. at 3.) He claims his supervisor harassed him through periodic performance evaluations stating he had poor judgment and bad interpersonal skills. (*Id.* at 4.)

In order to establish a *prima facie* case for harassment constituting a hostile work environment, Vega must allege that (1) he was subjected to unwelcome conduct; (2) which was based on his national origin; (3) which was sufficiently pervasive or severe to alter the conditions of his employment and to create a hostile work environment; and (4) there is a basis for imputing this conduct to the employer. *Ocheltree v. Scollon Prod., Inc.,* 335 F.3d 325, 331 (4th Cir. 2003). He must allege facts to establish a possible inference that "but for" his national origin, he would not have been subjected to the discriminatory treatment. *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998) (internal quotation marks and citation omitted).

Here, Vega alleges that he was subjected to three disciplinary reports by his supervisor that he regarded as unfair. The principal problem with Vega's attempt to allege a hostile work environment is that he provides no facts to suggest that his supervisor disciplined him because of his national origin. Vega does not allege that she made comments reflecting a discriminatory animus nor that she treated similarly-situated employees with different national origins differently than she treated him. Even if Vega's supervisor harbored a personal dislike for him that made his job more difficult, "[a]n employer is not required to like his employees." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (citation omitted).

In the absence of any allegations suggesting that Vega's supervisor treated him unfairly based on his national origin, Vega's hostile work environment claim must be dismissed.

## C.      Equal Pay Act and Title VII discriminatory compensation claims

Vega asserts that he was underpaid in violation of the Equal Pay Act and Title VII. He cites without elaboration a "County document dated February 2, 2010" for support of his claim that he should have been paid $41,500 rather than his actual salary of $36,500. (D.E. 54; Compl. at 4.)

To establish a *prima facie* case under the Equal Pay Act, "the plaintiff bears the burden of showing that [he] (1) receives lower pay than a [female] co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions." *Strag v. Bd. of Trs., Craven Cmty. College,* 55 F.3d 943, 948 (4th Cir. 1995). In his complaint, however, Vega fails to mention even a single female co-employee who earned a higher salary than him during his time with Wake County. Furthermore, the Equal Pay Act targets only gender-based compensation discrimination. *Diamond v. T. Rowe Price Assocs.,* 852 F. Supp. 372, 389 (D.Md.

1994).  Vega makes no allegation related to gender discrimination in his complaint, so his claim under the Equal Pay Act must fail.

To establish a *prima facie* case of compensation discrimination based on race or national origin under Title VII, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Services, LLC,* 375 F.3d 288, 295 (4th Cir. 2004). Here again, Vega makes no allegations that any employee outside of the protected class was compensated any differently.  He also alleges that he received three written disciplinary warnings which suggest that his job performance was not satisfactory.

Vega's Equal Pay Act and Title VII claims with respect to compensation are dismissed.

**D.     Other Pending Motions**

**(1)     Motion for Summary Judgment (D.E. 28)**

Under Rule 56 of the Federal Rules of Civil Procedure, the purpose of a motion for summary judgment is to dispose of an action in which there is no genuine issue of material fact. Wake County submitted an Answer to Vega's Complaint in which it denied many of Vega's factual allegations.  Vega's Motion for Summary Judgment (D.E. 28) is premature and it is denied without prejudice.

**(2)     Motion for Sanctions (D.E. 37)**

Vega's Motion for Sanctions (D.E. 37) expresses discontent with Wake County's Answer to his Original Complaint.  He asks this court to sanction Wake County for violating Rule 11(b)(1) of the Federal Rules of Civil Procedure.  The substance of his argument is that Wake

County either denied or stated that it lacked knowledge or information regarding many of Vega's claims that Vega regarded as indisputably true. (D.E. 38.)

This Motion is denied for two reasons. First, the motion is now moot. After Vega filed an Amended Complaint (D.E. 54), Wake County filed a new Answer (D.E. 61) that, like the County's original Answer (D.E. 21), conformed to the demands of Rule 8(b). Second, the court finds no evidence that Wake County violated Rule 11(b) in its original response to Vega's Complaint. Rule 11 demands that an attorney certify that her submissions to the court are not being presented for an improper purpose and that "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). Vega fails to present any argument as to Wake County's improper purpose beyond the simple assertion that they know more than they are letting on. Discovery, not sanctions under Rule 11, is the proper avenue through which to address issues such as those raised in Vega's Motion for Sanctions.

### (3)  Motion for Trial (D.E. 63)

Vega filed a motion requesting that the court set this matter for trial. While the matter may eventually be set for trial, it will not be scheduled until after the parties have had the opportunity to file Motions for Summary Judgment. This motion is denied.

## IV. Conclusion

For the foregoing reasons, the court grants Wake County's Motion to Dismiss (D.E. 22) as to all of Vega's claims except his claim for retaliatory termination. Vega's Complaint adequately pleads this claim and it may go forward to the discovery stage. The court also denies without prejudice Vega's Motion for Summary Judgment (D.E. 28), denies his Motion for Sanctions (D.E. 37), and denies his Motion for Trial (D.E. 63).

Counsel for Wake County is ordered to contact Vega and discuss whether the matters raised in the Motion for Protective Order (D.E. 49) and Motion to Quash (D.E. 43) have been resolved. Counsel for Wake County shall submit a letter to the court (with a copy sent to Vega) at Documents_USMJ_Numbers@nced.uscourts.gov reflecting the position of both parties regarding whether the court still needs to address these motions. This letter shall be submitted before 5:00 p.m. on April 3, 2015.

The court will hold a status conference in this matter on April 10, 2015, beginning at 10:00 a.m. in the 5th Floor Courtroom of the Terry Sanford Federal Building, 310 New Bern Avenue, Raleigh, North Carolina. The parties shall be prepared to discuss whether additional discovery is necessary, timing for filing of summary judgment motions, and potential trial dates.

Dated: March 27, 2015

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE