IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00257-RN

**Ricardo Vega**,

          Plaintiff,

v.

**Wake County Government**, et al.,

          Defendants.

**Order on Parties' Motions for Summary Judgment**

On May 1, 2014, Plaintiff Ricardo Vega ("Vega"), proceeding *pro se*, filed a Complaint against Wake County Government; Jim Hartman, Wake County Manager; Ramon Rojano, Human Services Department Director; and Warren Ludwig, Child Welfare Director (collectively, "Wake County"). D.E. 1, 54.[1] He alleged retaliatory termination, failure to employ, failure to promote, and several other claims under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. Amend. Compl. at 2–4, D.E. 54. On June 23, 2014, Wake County filed a Motion to Dismiss Vega's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. D.E. 22. The court dismissed all of Vega's claims except for his claim of retaliatory termination on March 27, 2015. D.E. 65.

On April 7, 2015, Vega filed a Motion for Summary Judgment on his retaliatory termination claim. D.E. 67. He contends that the written disciplinary warnings he received from Wake County during his employment are sufficient factual support to warrant summary judgment on his retaliation claim. *See* Pl. Mem. in Supp. at 1–2, D.E. 68. Wake County

---

[1] Vega filed an Amended Complaint (D.E. 54) on January 5, 2015 in which he redacted the confidential information contained in his original filing and elaborated the various forms of relief requested. All references to Vega's Complaint will be to his Amended Complaint.

1

responded to Vega's Motion (D.E. 71) and filed its own Motion for Summary Judgment on May 13, 2015 (D.E. 72). Wake County argues that Vega failed to provide factual support for his claim that he was terminated in retaliation for complaining about discriminatory treatment. Def. Mem. in Supp. at 6, D.E. 73. It contends further that the sworn affidavits of Vega's supervisors show that Vega never complained about discriminatory treatment and that he was fired for incompetence, not for his participation in any protected activity. *Id.* On June 1, 2015, Vega responded to Wake County's Motion (D.E. 75), submitted a second memorandum, and attached a sworn affidavit in support of his original Motion (D.E. 75-1).

The court has reviewed the parties' motions and their accompanying submissions. Based on this review, the court determines that Wake County has demonstrated that there is no dispute of material fact and that it is entitled to judgment as a matter of law on Vega's claim of retaliatory termination. Accordingly, the court grants Wake County's Motion for Summary Judgment (D.E. 72) and denies Vega's Motion for Summary Judgment (D.E. 67).

## I. Factual Background

Vega's Complaint identifies him as a Canadian citizen of Latino-descent who worked for Wake County Human Services as a social worker from 2005 until his termination on November 25, 2013. Compl. at 2–4, D.E. 54. He worked for Wake County under a North American Free Trade Agreement ("NAFTA") work visa. *Id.*

From 2010 until his termination, Vega received several warnings about his job performance. In December 2010, December 2011, and May 2012, Vega's supervisor, Kenisha Hinton, issued him "coaching memos" to address deficiencies in Vega's performance at work. Hinton Aff. Ex. 1 at 3, D.E. 72-1. On October 18, 2012, Hinton issued Vega his first formal written warning. *Id.*; Compl. at 5. The warning addressed Vega's continued failure to exercise

good judgment, to follow through and complete assigned tasks, and to speak to his co-workers in an appropriate manner. Hinton Aff. Ex. 1 at 3-4. Among several other things, the document censured Vega for taking a picture of a client's five year old daughter, which "jeopardized [the] parent's trust," "breached confidentiality, and demonstrated poor judgment." *Id.* at 3; *see* Compl. at 11. Vega stated that he took the picture because he thought the girl was "very cute" and his own daughters "would love her." Compl. at 11. The warning noted that this was the fifth case in two years that Hinton had to reassign to another social worker because Vega's poor judgment undermined his ability to serve the client at issue. Hinton Aff. Ex. 1 at 3.

Hinton issued Vega a second written warning on February 20, 2013. Hinton Aff. Ex. 2 at 10; Compl. at 7. This document noted Vega's willful failure to carry out a supervisor's reasonable request and his continued exercise of poor judgment. Hinton Aff. Ex. 2 at 10. The warning focused on an incident in which Vega transported a child home from school without permission from her parents. *Id.* Hinton alleged that she gave Vega "very specific instructions that [he was] not to transport the youth home without permission of her mother." *Id.*; Compl. at 7. However, when Vega could not reach the child's mother by phone, he decided to transport the child himself. Hinton Aff. Ex. 2 at 10; Compl. at 7.

Hinton gave Vega a third warning on November 7, 2013. Hinton Aff. Ex. 3 at 19–21; Compl. at 8. The warning asserted that he failed to use good judgment and obtain approval from supervisors. Hinton Aff. Ex. 3 at 19. More specifically, the warning stated that Vega shared information with a client about his wife's immigration status. *Id.* at 20; Compl. at 10. After Vega made this disclosure, his client threatened to report him to the authorities unless he altered his approach to her case. Hinton Aff. Ex. 3 at 20; Compl. at 10. The warning stated that this situation left Wake County "in a vulnerable situation with respect to serving the client" and that

3

Vega's performance was "negatively impacting the efficiency of the team." Hinton Aff. Ex. 3 at 20.

Vega submitted a written grievance to Robert Sorrels, Deputy Director of Human Services, in connection with the third warning. Sorrels Aff. Ex. 2 at 10–12, D.E. 72-2; Compl. at 13. Vega's Complaint stated that he filed the grievance because he was "[t]ired of accusations and biased written warnings, unjust and discriminatory employment practices." Compl. at 13. However, Vega's grievance did not allege discrimination or bias. *See* Sorrels Aff. Ex. 2 at 10–12, D.E. 72-2. Instead, Vega's grievance attempted to rebut Wake County's allegations about his poor judgment. *See id.*

After submitting his grievance, Vega met with Sorrels to discuss his concerns on November 22, 2013. Sorrel Aff. ¶ 5, D.E. 72-2. Ross Yeager, a Regional Center Director who was shadowing Sorrels that day, also attended the meeting. Yaeger Aff. ¶¶ 2–4, D.E. 72-3. At the meeting, Vega reiterated his disagreements with Wake County's allegations of poor work performance, but never mentioned any issues with discrimination. Sorrels Aff. ¶ 5, D.E. 72-2. Sorrels recalled that, "All of [Vega's] statements were attempts to refute his allegations of poor work performance. None of these statements were made to raise concerns about previous discriminatory employment practices." *Id.* Further, Yeager stated, "At no time during the meeting on November 22, 2013 did Mr. Vega raise any concerns about discriminatory employment practices." Yeager Aff. ¶ 4, D.E 72-3.

At the conclusion of the meeting, Sorrels upgraded Vega's third warning to a dismissal because he "could not see any recognition or effort on [Vega's] part to correct" his repeatedly sub-standard work performance. *See* Sorrels Aff. ¶ 8, D.E. 72-2. He notified Vega of his decision in writing on November 26, 2013. *Id.* ¶ 9.

4

Vega appealed his termination, but withdrew the appeal when he received a job offer from the Wake County Child Care Subsidy Program. Compl. at 14, D.E. 54. Ultimately, however, Wake County "did not continue considering [Vega] for the child care position that had been offered." *Id.* On March 7, 2014, Vega filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on national origin. *Id.* at 15. On April 1, 2014, Vega received the EEOC's Notice of Right to Sue. *Id.* He commenced this action on May 1, 2014. D.E. 1.

## II. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that there is no "genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it may be outcome determinative. *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This requires the party to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. *Id.*

While the moving party bears the initial responsibility, the burdens shifts to the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To

5

Case 5:14-cv-00257-RN   Document 79   Filed 08/19/15   Page 5 of 12

satisfy this burden, the party must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. Rather, the party must produce evidence on which a jury could reasonably find in his or her favor. *See id.*

In considering the respective parties' motions for summary judgment, this court construes the evidence and draws all justifiable inferences in the favor of the non-moving party. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [because] there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

**III. Analysis**

    **A. Vega's Motion for Summary Judgment**

Vega argues that he is entitled to summary judgment because he repeatedly disputed the allegations contained in his various written warnings, complained about how his supervisor was treating him, and has produced documents establishing both of these facts. Pl. Mem. in Supp. at 1, D.E. 68. Wake County argues that the court should deny Vega's Motion because Vega provides no factual support for the necessary elements of his retaliatory termination claim. Resp. at 1, D.E. 71. The court determines that Vega's Motion must be denied because he fails to produce facts or law that would entitle him to relief.

To establish a claim for retaliatory termination, Vega must show (1) he engaged in a protected activity, (2) his employer took an adverse action against him, and (3) there was a causal connection between the protected activity and the adverse employment action. *Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1228 (4th Cir. 1998) (citation omitted). For Vega to succeed in his quest for summary judgment on his retaliatory termination claim, he must produce

6

Case 5:14-cv-00257-RN   Document 79   Filed 08/19/15   Page 6 of 12

facts reasonably establishing the three elements of this claim and show that Wake County has failed to produce contrary evidence that would place these facts in dispute.

To establish the first element, Vega must show that no dispute exists over whether he engaged in a protected activity. There are two types of protected activities: participation and oppositional. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). A plaintiff engages in "participation activities" when he (1) makes a charge, (2) testifies, (3) assists, or (4) participates in an investigation, proceeding, or hearing. *Id.* (citing 42 U.S.C. § 2000-3(a) (2013)). Participation activities are typically tied to an employee's participation in the EEOC's enforcement processes. *Id.* A plaintiff engages in "oppositional activities" when he informally voices concerns or opinions about discriminatory activities. *Id.* In this case, only oppositional activities are at issue because Vega did not initiate an EEOC proceeding until after his termination.

Vega's Complaint stated that he submitted a grievance to his third written warning because he was "[t]ired of accusations and biased written warnings, unjust and discriminatory employment practices." Compl. at 13, D.E. 54. The court previously determined that this statement, combined with Vega's termination in the immediate wake of his grievance hearing, enabled Vega's retaliation claim to survive dismissal because it sufficiently alleged that Vega may have been engaged in an "oppositional" protest against perceived discrimination. *See* Order on Mot. to Dismiss at 10, D.E. 65.

Here, however, Vega provides no factual support for the idea that he was engaged in a protected "oppositional" activity. Vega merely repeats his observation that he was fired in the wake of submitting a grievance and points to various documents included in his Initial Disclosures for support. Pl. Mem. in Supp. at 1–2, D.E. 68; *see* D.E. 27-9, 10, 11, 12. These

7

documents – Vega's grievance letter and accompanying copies of emails, the preceding written warnings, and termination letter – make no mention of discrimination at all.  Vega's grievance letter and accompanying e-mail correspondence merely show that he disagreed with his supervisor about the conduct for which he was disciplined.  D.E. 27–11.  The three written warnings and the termination letter from Deputy Director Sorrels reveal a similar story: they contain much discussion of Vega's unsatisfactory job performance but no statements exhibiting or discussing discrimination.  D.E. 27–8, 9, 10, 12.  Accordingly, Vega has failed to put forward any facts to support his claim that he was engaged in a protected "oppositional" activity.[2]

Under Rule 56(e) of the Federal Rules of Civil Procedure, when a party fails to support his or her assertions with appropriate facts, the court may do the following: (1) give an opportunity to properly support or address the fact, (2) consider the fact undisputed for the purposes of the motion, (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it, or (4) issue an appropriate order. Fed. R. Civ. P. 56(e)(1–4).

Here, an order denying Vega's Motion under Rule 56(e)(4) of the Federal Rules of Civil Procedure is appropriate because Vega has failed, over multiple opportunities, to provide factual support for his claim.  The court noted previously that, based on the allegations in Vega's Complaint, his retaliatory termination claim was a "close call" that only survived dismissal because the court construed the ambiguities in the Complaint in the light most favorable to the plaintiff.  *See* Ord. on Mot. to Dismiss at 10, D.E. 65.  At this stage, Vega has had multiple

---

[2] As a part of Vega's Response (D.E. 75) to Wake County's competing Motion for Summary Judgment (D.E. 72), Vega submits what amounts to a second memorandum in support and accompanying affidavit (D.E. 75-1) to bolster his Motion for Summary Judgement (D.E. 67). Neither Vega's second memorandum nor his accompanying affidavit contain argument or factual allegations supporting the idea that he was engaged in a protected oppositional activity before he was terminated.  They merely continue Vega's ongoing argument that his actions were unfairly misunderstood.  *See* D.E. 75 and 75-1.

opportunities to clarify the factual allegations supporting his claim. Vega's Motion and accompanying submissions, however, fail to provide any factual support for the first and most essential element of that claim – namely, whether he was involved in a protected "oppositional" activity. *See Karpel*, 134 F.3d at 1228.

Vega neither argues nor cites any materials in the record to support the idea that he employed an informal means such as his workplace grievance procedure to protest discrimination. Vega dedicates his copious submissions to the court exclusively to arguing about the facts underlying the various disciplinary actions taken against him. Furthermore, while the court must consider the materials Vega cites in support of his motion for summary judgment, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The record contains three affidavits from Wake County employees stating that Vega (1) did not allege discrimination in his pre-termination proceedings, (2) did not allege discrimination in his written grievance, and (3) did not allege discrimination during his meeting about the grievance. *See* Hinton Aff. ¶ 8, D.E. 72-1; Sorrels Aff. ¶ 5, D.E. 72-2; Yeager Aff. ¶ 4, 72-3.

These affidavits, coupled with Vega's failure to provide any factual support for his contrary claim, demonstrate to the court that there is no dispute of material fact between the parties and that a jury could not reasonably find Vega participated in a protected activity. For this reason, the court denies Vega's Motion for Summary Judgment (D.E. 67).

### B. Wake County's Motion for Summary Judgment

Wake County argues that it is entitled to summary judgment because Vega failed to produce any evidence that he complained of discriminatory practices or that he was fired for those complaints. Def. Mem. in Supp. at 6, D. E. 73. In addition, Wake County has produced three affidavits that declare Vega never made such complaints. *Id.* Vega responds by arguing

9

against the reasons for which he was disciplined and ultimately terminated, but neither argues nor produces evidence to rebut Wake County's evidence that he never complained of workplace discrimination. *See* D.E. 75. The court determines that Wake County is entitled to summary judgment and grants its Motion (D.E. 72).

Wake County argues that Vega did not engage in a protected activity because he never complained of discrimination to any of his supervisors, including Deputy Director Sorrels. Def. Mem. in Supp. at 6, D.E. 73. To support its contention, Wake County cites an affidavit from Vega's supervisor, Kenisha Hinton, as well as affidavits from Sorrels and Yeager. Hinton, who issued all of Vega's written warnings and met with him on several occasions, states that "Vega never alleged discriminatory employment practices in any of these written warning conferences, nor at any other times." Hinton Aff. ¶¶ 4–5, D.E. 72-1. Hinton also states that Vega's responses to his pre-termination proceedings consisted solely of arguing against the various allegations of underperformance. *Id.* ¶ 6.

After Vega filed his grievance to Hinton's third written warning, Wake County shows that Vega continued to defend against what he perceived as unfair criticisms of his work, but never complained about discrimination. Sorrels's affidavit states that, "All of [Vega's] statements were attempts to refute his allegations of poor work performance. None of these statements were made to raise concerns about previous discriminatory employment practices." Sorrels Aff. ¶ 5, D.E. 72-2. Wake County buttresses this evidence with Yaeger's affidavit, which confirms that Vega did not allege discrimination at the grievance meeting. Yeager Aff. ¶ 4, D.E 72-3.

In response, Vega argues that salary information showing that he was underpaid as a Human Services Practitioner shows a "pattern of discrimination, punishment, and intimidation."

10

Pl. Resp. at 7, D.E. 75. Vega also cites an e-mail concerning Hinton's actions toward him, which he "perceived as discrimination and unfairness [sic] treatment in his job." *Id.* at 4. In the e-mail, Vega asserts a laundry list of complaints about his supervisor, including her failure to respond to his e-mails and failure to approve his mileage sheets. D.E. 27-7. He writes, "For this [sic] reasons I want to ask the administration to change me from Unit [sic] with a different supervisor if possible, so I do not have to quit my job, because I need my job, and it also happens that I like it." *Id.*

Vega's email, while clearly showing that he had a difficult relationship with his supervisor, does not constitute evidence that he ever complained about discriminatory treatment. This document, like all of the documents that Vega cites to support his claim, confirms rather than rebuts Wake County's contention that Vega never complained of discrimination. These documents show only that Vega disagreed with the reasons supporting the disciplinary actions taken against him. Wake County's evidence on whether Vega participated in a protected activity, therefore, stands uncontested. Thus, there is no dispute of material fact concerning whether Vega engaged in the protected activity of protesting against workplace discrimination.

Because there is no dispute of material fact, Wake County must next show that judgment is appropriate as a matter of law. Judgment as a matter of law applies when the "facts are so one-sided that [a] party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Here, Hinton, Sorrel and Yeager attest that Vega did not allege discrimination during his pre-termination proceedings or during the grievance process. Hinton Aff. ¶ 8, D.E. 72-1; Sorrels Aff. ¶ 5, D.E. 72-2; Yeager Aff. ¶ 4, 72-3. Vega fails to dispute these affidavits with other facts from the record. Therefore, the court determines that Wake County is entitled to judgment as a matter of law because Vega failed to produce facts supporting the "protected activity" element of

11

his legal claim. Accordingly, the court grants Wake County's Motion for Summary Judgment (D.E. 72).

## IV. Conclusion

For the foregoing reasons, the court grants Wake County's Motion for Summary Judgment (D.E. 72) and denies Vega's Motion for Summary Judgment (D.E. 67).

In addition, the court cancels the Final Pre-Trial Conference scheduled for August 24, 2015 at 10:00 am. The Clerk of Court is directed to close this case.

Dated: August 19, 2015.

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE